UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ELIJAH BURTON, DONESHA BURTON, KELSEY FLEMING, QUINCY AUSTIN, and EDGAR TORRES, on behalf of themselves, individually, and on behalf of all others similarly-situated,

Plaintiffs,

-against-

CE SOLUTIONS GROUP, LLC, FLAGGING SPOTTING FLIPPING SERVICES INC., CE FLAGGING PLUS CORP., ARGANI INC., EDWARD SLININ, individually, DORA SLININ, individually, GARY SAMUEL, individually, and HASSAN SIBLINI, individually,

Defendants.

**COMPLAINT**

Docket No.:  22-cv-3213

**JURY TRIAL DEMANDED**

**COLLECTIVE ACTION**

Plaintiffs, ELIJAH BURTON, DONESHA BURTON, KELSEY FLEMING, QUINCY AUSTIN, and EDGAR TORRES, (collectively "Plaintiffs"), on behalf of themselves, individually, and on behalf of all others similarly-situated ("FLSA Plaintiffs"), by and through their attorneys, JOSEPH & NORINSBERG, LLC, as and for their Complaint against CE SOLUTIONS GROUP, LLC ("CESG"), FLAGGING SPOTTING FLIPPING SERVICES INC ("FSFS"), CE FLAGGING PLUS CORP. ("CEFP"), ARGANI, INC. ("Argani") (Defendants CESG, FSFS, CEFP, and Argani, collectively as "the Corporate Defendants"), EDWARD SLININ, individually, DORA SLININ, individually, and GARY SAMUEL, individually, and HASSAN SIBLINI, individually (all, collectively where appropriate, as "Defendants"), allege upon knowledge as to themselves and their own actions and upon information and belief as to all other matters as follows:

1

## NATURE OF THE CASE

1.      This is a civil action for damages and equitable relief based upon willful violations that the Defendants committed of Plaintiffs' rights guaranteed to them by: (i) the overtime provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207(a); (ii) the overtime provisions of the New York Labor Law ("NYLL"), NYLL § 160; N.Y. Comp. Codes R. & Regs. ("NYCCRR") tit. 12, § 142-2.2; (iii) the minimum wage provisions of the NYLL, NYLL §§ 198, 652, 12 NYCRR § 142-2.1; (iv) the NYLL's requirement that employees receive one hour's pay at the minimum wage rate for any day in which the spread of hours exceeds ten, NYLL §§ 652, 198, 12 NYCRR § 142-2.4; (v) the NYLL's requirement that employers furnish employees with wage statements containing specific categories of accurate information on each payday, NYLL § 195(3); (vi) the NYLL's requirement that employers furnish employees with a wage notice at hire containing specific categories of accurate information, NYLL § 195(1); and (vii) any other claim(s) that can be inferred from the facts set forth herein.

## PRELIMINARY STATEMENT

2.      Defendant CESG is a New York limited liability company engaged in the business of providing services assisting non-party Consolidated Edison Company of New York, Inc. ("ConEd"), by staffing ConEd worksites with, *inter alia*, "spotters" and "flaggers."

3.      Defendants FSFS, CEFP, and Argani are three of many corporate entities that are nominally owned by various individuals but which, in reality, function as subsidiaries and/or agents of Defendant CESG, and for whom Defendant CESG is liable for any wage violations pursuant to the New York Construction Industry Fair Play Act ("CIFPA"). To that end, Defendants FSFS, CEFP, and Argani nominally employ various individuals who provide the "spotter" or "flagger" services that CESG provides to ConEd.

4.      Defendants Eduard Slinin ("E. Slinin") and Dora Slinin ("D. Slinin") are owners, operators and managers of CESG who set the company's payroll policies, including the unlawful practices complained of herein.

5.      Defendant Gary Samuel is the owner, operator, and manager of FSFS, who - - together with CESG - - sets the company's payroll policies, including the unlawful practices complained of herein, and nominally paid Plaintiffs and all others similarly situated their wages.

6.      Defendant Hassan Siblini is the owner, operator and manager of CEFP and Argani, who - - together with CESG - - sets those companies' payroll policies, including the unlawful practices complained of herein, and nominally paid Plaintiffs and all others similarly situated their wages.

7.      The Corporate Defendants together operate as a single enterprise and/or joint employer of Plaintiffs, in that CESG controlled the economic realities of each of the other Corporate Defendants, including controlling all terms and conditions of Plaintiffs' and all others similarly situated individuals' employment, specifically with respect to hiring, firing, scheduling, maintaining employment records, and determining their rates of pay and administering their pay. Specifically, all documentation relating to Plaintiffs are maintained in Defendant CESG's corporate offices, and Defendant CESG exercises control over all Plaintiffs' work schedules by assigning them to work various jobs staffed by CESG, thereby controlling the economic realities of their employment.

8.      As described below, throughout the entirety of their employment, Defendants have willfully failed to pay Plaintiffs the wages lawfully due to them under the FLSA and the NYLL. Specifically, for the entirety of their employment, Defendants have required Plaintiffs to work, and Plaintiffs did in fact work, well in excess of forty hours during virtually every workweek of

3

their employment.  Yet Defendants willfully misclassified Plaintiffs as independent contractors in direct violation of CIFPA, the FLSA, and the NYLL. Based thereupon, Defendants refused to pay Plaintiffs any overtime compensation for any of their hours worked beyond forty in a week in violation of the FLSA and the NYLL. Instead, Defendants paid Plaintiffs at their regular rate of pay - - $10.00 per hour - - for all hours worked.

9.      Furthermore, Defendants violated the NYLL by failing to provide Plaintiffs with: at least the New York statutory minimum wage for all hours worked; an additional one hour's pay at the New York minimum wage rate for all days when Plaintiffs' workdays exceeded ten hours from start to finish in violation of the NYLL and NYCRR's spread-of-hours provision, NYCRR § 142-2.4; accurate wage statements on each payday that included, *inter alia*, their actual hours worked and/or their overtime rates of pay, in violation of NYLL § 195(1); and with any wage notice upon hire, let alone an accurate one, in violation of NYLL § 195(1).

10.      Defendants paid and treated all of their flaggers and spotters in the same manner, regardless of job title or job duties, by uniformly refusing to pay them any overtime compensation when their hours exceeded forty in a week, and by failing to pay them at least at the New York minimum wage rate for all hours, spread-of-hours pay when their workday exceeded ten hours, wage notices upon hire, and accurate wage statements on each payday.

11.      Plaintiffs therefore bring this lawsuit against Defendants pursuant to the collective action provisions of the FLSA, 29 U.S.C. § 216(b), on behalf of themselves, individually, and on behalf of all other persons similarly-situated during the applicable FLSA limitations period who suffered damages as a result of the Defendants' willful violations of the FLSA.

12.      Plaintiffs assert their claims under the NYLL and NYCRR on behalf of themselves and any FLSA Plaintiffs who opt-into this action.

## JURISDICTION AND VENUE

13.     The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331, as this action arises under 29 U.S.C. § 201, *et seq*.  The supplemental jurisdiction of the Court is invoked pursuant to 28 U.S.C. § 1367 over all claims arising under New York law.

14.     Venue is appropriate in this court pursuant to 28 U.S.C. § 1391(b)(1) and/or (b)(2), as one or more of the Defendants reside within this judicial district, and as a substantial part of the events or omissions giving rise to the claims for relief occurred in this judicial district.

15.     On March 20, 2020, then-New York Governor Andrew M. Cuomo signed Executive Order 202.8, which tolled for thirty (30) days "any specific time limit[s] for the commencement, filing, or service of any legal action, notice, motion or other process or proceeding" under any New York State laws or court procedural rules. The thirty (30)-day tolling period began on March 20, 2020 and continued through subsequent extensions of that Order via Executive Orders 202.14, 202.28, 202.38, 202.48, 202.55, 202.60, and 202.67, through November 3, 2020. In total, the Executive Orders provided for a toll of two hundred and twenty-eight (228) days.

16.     In addition, on May 21, 2021, a putative class action under the NYLL was filed in Supreme Court, New York County, against, *inter alia*, Defendants CESG, E. Slinin, and D. Slinin. The action, *Richardson v. CE Solutions Group, LLC, et al*., Index No. 653369/2021 (hereinafter, "the *Richardson* action"), alleging, *inter alia*, claims under the NYLL for unpaid overtime, unpaid minimum wages, unpaid spread-of-hours pay, and failure to provide wage statements and wage notices, thereby tolling the statute of limitations for all putative class members - - including all Plaintiffs and putative FLSA Plaintiffs - - for these claims as of May 21, 2021.

17.     As set forth in Plaintiffs' executed opt-in forms, filed contemporaneously herewith, Plaintiffs affirmatively opt-out of the putative class in the *Richardson* action, and instead elect to pursue their NYLL claims contemporaneously with their FLSA claims asserted herein.

## PARTIES

18.     At all relevant times, Plaintiffs worked for Defendants in New York and were "employees" entitled to the protections as defined in the FLSA, NYLL, and the NYCRR.

19.     At all relevant times, Defendant CESG was and is a New York limited liability company with its principal place of business located at 259 Columbia Street, Brooklyn, New York 11231.

20.     At all relevant times Defendants E. Slinin and D. Slinin are owners, operators and managers of CESG who set the company's payroll policies, including the unlawful practices complained of herein.

21.     At all relevant times, Defendant FSFS was and is a New York domestic business corporation with its principal place of business located at 179-24 137th Avenue, Jamaica, New York 11343.

22.     Defendant Samuel was and is the owner, operator, and manager of Defendant FSFS, who - - together with the other Defendants - - set the company's payroll policies, including the unlawful practices complained of herein.

23.     At all relevant times, Defendant CEFP was and is a New York domestic business corporation with its principal place of business located at 30 Jake Court, Staten Island, New York 10304.

24.     At all relevant times, Defendant Argani was and is a New York domestic business corporation with its principal place of business also located at 30 Jake Court, Staten Island, New York 10304.

25.     Defendant Siblini was and is the owner, operator, and manager of Defendants CEFP and Argani, who - - together with the other Defendants - - set these companies' payroll policies, including the unlawful practices complained of herein.

26.     The Corporate Defendants all operated as a single enterprise and/or joint employer of Plaintiffs and all others similarly situated.

27.     Specifically, CESG contracts directly with ConEd to perform work involving the maintaining, rehabilitating, repairing, renovating, excavating and/or reconstructing of public roadways (hereinafter referred to as "Construction Work") in and around New York City. To carry out that Construction Work, CESG jointly employs Plaintiffs and all others similarly situated through the other named Corporate Defendants.

28.     At all relevant times herein, Defendants were "employers" within the meaning of the FLSA and the NYLL.  Additionally, the Corporate Defendants - - both singly and together as a single enterprise/joint employer - - employed two or more employees, had qualifying annual business volume exceeding $500,000.00 at all relevant times, and are and have been engaged in interstate commerce within the meaning of the FLSA, as they routinely work on public roadways that are connected to and/or are interstate highways, and use equipment and materials that are and have been moved in interstate commerce that originated in states other than New York, the combination of which subjects Defendants to the FLSA's overtime requirements as an enterprise.

## COLLECTIVE ACTION ALLEGATIONS

29.     Plaintiffs seek to bring this suit to recover from Defendants unpaid overtime compensation and liquidated damages pursuant to the applicable provisions of the FLSA, 29 U.S.C. § 216(b), on his own behalf, as well as on behalf of those in the following collective:

> Current and former flaggers and spotters who, during the applicable FLSA limitations period, performed any work for any of the Defendants, and who consent to file a claim to recover damages for: (1) overtime compensation that is legally due to them; and/or (2) liquidated damages that are legally due to them ("FLSA Plaintiffs").

30.     Defendants treated Plaintiffs and all FLSA Plaintiffs similarly in that Plaintiffs and all FLSA Plaintiffs: (1) performed similar tasks, as described in the "Background Facts" section below; (2) were subject to the same laws and regulations; (3) were paid in the same or similar manner; (4) were required to work in excess of forty hours in a workweek; and (5) were not paid the required one and one-half times their respective regular rates of pay for all hours worked per workweek in excess of forty.

31.     At all relevant times, Defendants are and have been aware of the requirements to pay Plaintiffs and all FLSA Plaintiffs at an amount equal to the rate of one and one-half times their respective regular rates of pay for all hours worked each workweek above forty, yet they purposefully and willfully chose and choose not to do so.

32.     The precise number of FLSA Plaintiffs should be readily available from a review of the Defendants' personnel, scheduling, time, and payroll records, and from input received from the collective action as part of the notice and "opt-in" process provided by 29 U.S.C § 216(b).

33.     Thus, all FLSA Plaintiffs are victims of Defendants' pervasive practice of willfully refusing to pay their employees overtime compensation for all hours worked per workweek above forty, in violation of the FLSA.

## BACKGROUND FACTS

### *Allegations Common to All Plaintiffs*

34.     Defendant CESG is a limited liability company with its principal place of business in Brooklyn, New York. CESG operates a business of providing flagging and spotting services to ConEd pursuant to Blanket Purchase Agreements ("BPA"), entered into for varying terms from six months to three years, dating back to November 1, 2017.

35.     Upon information and belief, the most recent BPA between CESG and ConEd was executed and/or amended on or after January 5, 2022.

36.     Defendant CESG worked with the other Corporate Defendants to help staff its various flagging and spotting jobs with ConEd.

37.     The Corporate Defendants were, at all times relevant herein, a single integrated enterprise and joint employer of each of the Plaintiffs, with Defendant CESG forming the central "axle" to the unlawful enterprise's wheel, and with each of the other Corporate Defendants operating as the "spokes" of that wheel.

38.     Specifically, each of the Corporate Defendants have, and had, an interrelation of operations in providing flagging and spotting services for ConEd with one another; concurrently control labor relations between employees and management, as CESG would direct the other Corporate Defendants to staff the ConEd Construction Work job sites with spotters and flaggers that could be assigned to any given site at any given time in CESG's discretion; are commonly managed by the same personnel, i.e., Defendants E. Slinin, D. Slinin, Samuel, Defendant Siblini, "Crytsal" (last name unknown), and others, who are the owners of Defendants CESG, FSFS, and the other unnamed Jon Doe Corporations; and are commonly owned and controlled financially by these individuals/entities.

39.     To that end, Defendant CESG: kept and maintained all documentation relating to Plaintiffs' work assignments and hours worked within CESG's corporate offices; assigned Plaintiffs to each of their jobs through the various Corporate Defendants; and unilaterally decided whether and when to discipline any of the Plaintiffs, including decisions relating to suspending their employment for any workplace rules or infractions enforced by CESG.

40.     Moreover, Defendant CESG controlled the economic realities of Plaintiffs' employment, as Plaintiffs performed jobs for CESG through the other Corporate Defendants pursuant to and reliant upon Defendant CESG's BPAs with ConEd, with all wages flowing directly from CESG's compensation via its ConEd Construction Work.

41.     Defendants employed Plaintiffs as Flaggers and/or Spotters.

42.     Plaintiffs' primary job duties were to physically block off areas on public roadways in New York City to save space for ConEd Construction Work performed by ConEd workers and/or contractors. To block off these areas, Defendants required Plaintiffs to stay and remain for extended periods of time and fixed locations determined solely by Defendant CESG in consultation with ConEd, and assigned to the other Corporate Defendants.

43.     Once Plaintiffs blocked off any such area, Plaintiffs worked as road flaggers - - directing traffic on public roadways and/or assisting Defendants and/or ConEd during the performance of ConEd Construction Work at these various locations.

44.     Defendant CESG supplied Plaintiffs - - through the other Corporate Defendants - - with individually numbered "Con Edison Flagging / Parking Location Timesheets" bearing a "CE Solutions Group" header, which contained CESG's principal address, phone number, and an email address - - "conedorders@nyc2way.com" - - for communication with CESG in the event that any incidents required reporting or direction from Defendants.

45.     Defendant CESG also required Plaintiffs to submit their weekly time sheets directly to CESG via email and/or to send text messages to CESG's human resources manager / bookkeeper, "Crystal" (last name unknown), listing their total weekly hours for the purposes of obtaining payment.

46.     Defendants required Plaintiffs to work around-the-clock hours for days at a time. Indeed, Defendants would commonly pay Plaintiffs well over 100 hours in a single workweek. This is because Defendants required Plaintiffs to remain on-site for the entire length of any given ConEd Construction Work job assignment, which sometimes last days on end without any pre-determined end date.

47.     Defendants prohibited Plaintiffs from leaving the area immediately surrounding a given job site unless expressly granted permission before leaving. If, for example, Plaintiffs needed to leave the job site to use a restroom, they were required to contact Defendant CESG's office personnel to request permission to leave for a brief break period of no more than thirty minutes. A representative of Defendant CESG - - in many cases, "Crystal" (last name unknown) - - would respond by either denying Plaintiffs' requests, or by granting Plaintiffs' requests.

48.     When granting Plaintiffs' requests, Defendant CESG would send a manager, supervisor, or another flagger or spotter to Plaintiffs' job site within thirty minutes to one hour after granting the request, to temporarily relieve Plaintiffs. While waiting for one of Defendant CESG's supervisors to arrive, Plaintiffs were prohibited from leaving the job site until temporarily relieved from duty.

49.     If Defendants refused to grant Plaintiffs' requests for a break, this sometimes meant that Plaintiffs would have to urinate into plastic buckets/containers while being forced to stay on-

site if a restaurant, bar, or bodega of some kind was not close enough to the job site to enable Plaintiffs to quickly use their facilities for a few moments' break time.

50.    If Defendants ever learned that any Plaintiffs had in fact left the job site for any amount of time without permission, Defendants would immediately suspend Plaintiffs from working on the given job and prohibit Plaintiffs from performing any additional work unless or until Defendants reassigned Plaintiffs to a new job site.

51.    As punishment for leaving a job site, Defendants threatened or refused to pay Plaintiffs for any of the work already performed on that particular job site.

52.    And as further punishment for leaving the job site, when assigning Plaintiffs to a new job, Defendants would routinely assign a recently suspended Plaintiff to a short-term job of between a few hours and one-to-three days. Once Defendants determined that they could "trust" a recently suspended Plaintiff to stay on a job site indefinitely without any breaks or requests to leave the job site, only then would Defendants assign a Plaintiff to a longer-term job of more than a few hours or days.

53.    Throughout their employment, Defendants paid Plaintiffs at the rate of either $10.00 per hour or $12.00 per hour for all hours worked, whether few or many.

54.    Defendants failed and refused to pay Plaintiffs any overtime compensation - - neither at time and one-half their regular rate of pay, nor at time and one-half the New York minimum wage rate - - for any of the hours that they worked beyond forty each week.

55.    And whenever Defendants did pay Plaintiffs, they paid them at a rate that was below the then-established New York minimum wage rate.

56.     That is, Defendants willfully misclassified Plaintiffs as independent contractors despite exercising complete control over the terms and condition of Plaintiffs' employment, in an attempt to unlawfully avoid paying them overtime compensation, minimum wages, and to circumvent the other NYLL and NYCRR statutory and regulatory requirements described herein.

57.     Specifically, in addition to the rules and requirements listed above, Defendants subjected each of the Plaintiffs and putative FLSA Plaintiffs to the following rules / requirements:

    a.  Plaintiffs all performed the exact services that Defendants held themselves out as offering to ConEd, within the usual course of Defendants' business operations;

    b.  Defendants directed Plaintiffs where to perform their work by assigning them with specific job locations;

    c.  Defendants required Plaintiffs to remain on-site for their assigned job locations during specific schedules, unilaterally determined by Defendants;

    d.  No Plaintiffs were required to make any investment of capital into any of Defendants' business, as Plaintiffs were simply required to be on-site at Defendants' direction at a specific location for a specific amount of time while performing the tasks assigned to them by Defendants;

    e.  Defendants prohibited Plaintiffs from making themselves available to the general public, as Defendants instead required Plaintiffs to exclusively perform work for Defendants during the tenure of any specific job assignment;

    f.  Defendants prohibited Plaintiffs from hiring anyone to assist Plaintiff with performing their job for Defendants;

    g.  Defendants required Plaintiffs to report their working time to Defendants for the purposes of receiving payment of their wages; and

    h.  Defendants could fire the Plaintiffs for any time for and for any reason within Defendants' discretion.

58.     Defendants paid each of the Plaintiffs weekly via personal check from one of the owners of the Corporate Defendants other than CESG.

59.     Despite routinely requiring Plaintiffs to work shifts in excess of ten hours in a workday from start to finish, and despite paying Plaintiffs at rates that were below the New York minimum wage rate, Defendants never provided Plaintiffs with one additional hour's pay at the New York minimum wage rate pursuant to the NYLL's and NYCRR's spread-of-hours provisions.

60.     On each occasion when Defendants paid Plaintiffs, Defendants failed to provide them with any wage statements, let alone one that accurately listed, *inter alia*, Defendants' corporate and/or "doing business as" name(s), Plaintiffs' actual hours worked, and Plaintiffs' owed overtime rates.

61.     Additionally, Defendants did not provide Plaintiffs with any wage notice at the time of their hire, let alone one that accurately contained, *inter alia*: Plaintiffs' rate or rates of pay and basis thereof; whether they would be paid by the hour, salary, or in another manner; allowances, if any, claimed as part of the minimum wage, including meal allowances; the regular payday designated by Defendants in accordance with the NYLL; the corporate name of Defendants; any "doing business as" names used by Defendants; the physical address of Defendants' main office(s) or principal place(s) of business, and a mailing address if different; and Defendants' telephone number(s).

62.     Defendants treated Plaintiffs and FLSA Plaintiffs in the same manner described above.

63.     Each hour that Plaintiffs and FLSA Plaintiffs worked was for the Defendants' benefit.

64.     Defendants acted in the manner describe herein so as to minimize their overhead while maximizing profits.

### *Elijah Burton*

65.     Plaintiff Elijah Burton ("E. Burton") worked for Defendants from in or around early September 2019 until in or around late December 2021.

66.     Plaintiff E. Burton worked for Defendants in the Bronx.

67.     Plaintiff E. Burton reported directly to Defendant Samuel and another one of the Corporate Defendants' managers, "Paul" (last name unknown).

68.     Defendants required Plaintiff E. Burton to report his weekly hours worked to "Crystal," Defendant CESG's bookkeeper.

69.     Defendants paid Plaintiff E. Burton at the rate of $12.00 per hour from the start of his employment through 2020.

70.     Beginning in January 2021, Defendants reduced Plaintiff E. Burton's rate to $10.00 per hour.

71.     Plaintiff E. Burton routinely worked between five and seven days per week, for well over 100 hours in a week, while required to remain on-call at a given worksite 24/7 until the job assignment was completed.

72.     Plaintiff E. Burton would only be able to take breaks from working during week-long (or longer) jobs under two scenarios. First, Defendants permitted Plaintiff E. Burton to occasionally take a thirty-minute break upon request, whenever Defendants were able to relieve Plaintiff E. Burton from a worksite by sending one of Defendants' supervisors or another flagger or spotter to the site while Plaintiff E. Burton used the restroom or took a short break.

73.     Despite working inhumane hours for many of his workweeks, Defendants never paid Plaintiff E. Burton any overtime compensation when his hours exceeded forty in a workweek.

74.     For example, during the week of August 9 through August 16, 2021, Defendants required Plaintiff E. Burton to work, and Plaintiff E. Burton did in fact work, the following schedule, without any uninterrupted break in any day, for a total of a staggering 126.5 hours, on a job site located in Bronx, New York:

| | |
|---|---|
| Monday, August 9, 2021: | 24 hours |
| Tuesday, August 10, 2021: | 24 hours |
| Wednesday, August 11, 2021: | 12:00 a.m. until 12:30 p.m., 12.5 hours |
| Thursday, August 12, 2021: | off |
| Friday, August 13, 2021: | 6:00 a.m. until midnight, 18 hours |
| Saturday, August 14, 2021: | 24 hours |
| Sunday, August 15, 2021: | 24 hours |

During that same week, Defendants paid Plaintiff E. Burton at the rate of $10.00 per hour for each of the 126.5 hours that he worked. Defendants paid Plaintiff E. Burton below the New York minimum wage rate of $15.00 per hour for all hours, and never paid Plaintiff E. Burton one and one-half the New York minimum wage rate, or even at his regular rate, for any of the 86.5 hours that he worked beyond 40 that week.

75.     Moreover, despite working greater than ten hours on six days during the week of August 9 through August 16, 2021, Defendants failed to pay Plaintiff E. Burton his owed spread-of-hours pay of one hour per day at the New York minimum wage rate of $15.00 per hour.

### ***Donesha Burton***

76.     Plaintiff Donesha Burton ("D. Burton") worked for Defendants from in or around early November 2019 until on or around July 28, 2021.

77.     Plaintiff D. Burton worked for Defendants as both a spotter and a flagger in the Bronx.

78.     Like Plaintiff E. Burton, Plaintiff D. Burton reported directly to Defendant Samuel and another one of the Corporate Defendants' managers, "Paul" (last name unknown).

79.     Defendants required Plaintiff D. Burton to report his weekly hours worked to "Crystal," Defendant CESG's bookkeeper.

80.     Defendants paid Plaintiff D. Burton at the rate of $10.00 per hour from the start of her employment through 2020.

81.     Beginning in January 2021, Defendants paid D. Burton at the rate of $12.00 per hour.

82.     Plaintiff D. Burton routinely worked between five and seven days per week, for well over 100 hours in a week, while required to remain on-call at a given worksite 24/7 until the job assignment was completed.

83.     Whenever working a week-long job (or longer), like Plaintiff E. Burton, Plaintiff D. Burton would only be able to take breaks from working under the same two instances described above.

84.     Despite working inhumane hours for many of his workweeks, Defendants never paid Plaintiff D. Burton any overtime compensation when her hours exceeded forty in a workweek.

85.     For example, during the week of August 17, 2020 through August 23, 2020, Defendants required Plaintiff D. Burton to work, and Plaintiff D. Burton did in fact work, *at least* the following schedule, without any uninterrupted break in any day, for a total of 107 hours, on a job site located in Bronx, New York:

| | |
|---|---|
| Monday, August 17, 2020: | Off |
| Tuesday, August 18, 2020: | Off |
| Wednesday, August 19, 2020: | 1:00 p.m. until midnight, 11 hours |
| Thursday, August 20, 2020: | 24 hours |
| Friday, August 21, 2020: | 24 hours |
| Saturday, August 22, 2020: | 24 hours, less time spent traveling home after midnight and returning before 4:00 a.m. |
| Sunday, August 23, 2020: | 24 hours |

During that same week, Defendants paid Plaintiff D. Burton at the rate of $10.00 per hour for each of the 107 hours that she worked. Defendants paid Plaintiff D. Burton below the New York minimum wage rate of $15.00 per hour for all hours, and never paid Plaintiff D. Burton one and one-half the New York minimum wage rate, or even at her regular rate, for any of the upwards of 67 hours that she worked beyond 40 that week.

86.     Moreover, despite working greater than ten hours on at least five days during the week of August 17, 2020 through August 23, 2020, Defendants failed to pay Plaintiff D. Burton her owed spread-of-hours pay of one hour per day at the New York minimum wage rate of $15.00 per hour.

***Quincy Austin***

87.     Plaintiff Quincy Austin ("Austin") worked for Defendants as a spotter and flagger from November 2015 until in or around mid-October 2021.

88.     Plaintiff Austin worked for Defendants in the Bronx and Manhattan.

89.     Plaintiff Austin reported to Defendant Siblini and Defendant CESG's bookkeeper, "Crystal."

90.     Defendants required Plaintiff Austin to report his weekly hours worked to "Crystal," Defendant CESG's bookkeeper.

91.     For his work, Defendants paid Plaintiff at the rate of $10.00 per hour from the start of his employment through December 2018.

92.     From January 2019 until the end of his employment, Defendants paid Plaintiff at the rate of $11.00 per hour.

93.     Before the onset of the COVID-19 global pandemic, Plaintiff Austin routinely worked between 80 and 144 hours per week, between five and seven days per week.

94.     Like Plaintiffs E. and D. Burton, whenever assigned to a week-long job (or longer), Defendants required Plaintiff Austin to remain on-call at a given worksite 24/7 until the job assignment was completed.

95.     During the first wave of the COVID-19 pandemic from in or around mid-March through June 2020, Plaintiff Austin routinely worked in excess of 140 hours per week, as his and the other Plaintiffs' jobs were considered essential work.

96.     Beginning in or around July 2020, Plaintiff Austin relocated to Georgia. He returned to New York to work for Defendants approximately every other month, taking one-month off in between active working months. From July 2020 until the end of his employment, Plaintiff Austin routinely worked in excess of 140 hours per week during his active working weeks.

97.     Despite working inhumane hours for many of his workweeks, Defendants never paid Plaintiff Austin any overtime compensation when his hours exceeded forty in a workweek.

98.     For example, during the week of July 8 through July 14, 2019, Defendants required Plaintiff Aust to work, and Plaintiff Austin did in fact work a total of 144 hours:

| | |
|---|---|
| Monday, July 8, 2019: | Off |
| Tuesday, July 9, 2019: | 24 hours |
| Wednesday, July 10, 2019: | 24 hours |
| Thursday, July 11, 2019: | 24 hours, less time spent traveling home after midnight and returning before 4:00 a.m. |
| Friday, July 12, 2019: | 24 hours |
| Saturday, July 13, 2019: | 24 hours |
| Sunday, July 14, 2019: | 24 hours, less time spent traveling home after midnight and returning before 4:00 a.m. |

During that same week, Defendants paid Plaintiff Austin at the rate of $11.00 per hour for each of the 144 hours that he worked. Defendants paid Plaintiff Austin below the New York minimum wage rate of $15.00 per hour for all hours, and never paid Plaintiff Austin one and one-half the New York minimum wage rate, or even at his regular rate, for any of the 104 hours that he worked beyond 40 that week.

99.     Moreover, despite working greater than ten hours on six days during the week of July 8 through July 14, 2019, Defendants failed to pay Plaintiff Austin his owed spread-of-hours pay of one hour per day at the New York minimum wage rate of $15.00 per hour.

### *Edgar Torres*

100.    Plaintiff Edgar Torres worked for Defendants from in or around mid-March 2021until in or around mid-February 2022.

101.    Plaintiff Torres worked for Defendants in the Bronx.

102.    Plaintiff Torres reported directly to Defendant Samuel and another one of the Corporate Defendants' managers, "Paul."

103.   Defendants required Plaintiff Torres to report his weekly hours worked to "Crystal," Defendant CESG's bookkeeper.

104.   Plaintiff Torres routinely worked between five and seven days per week, for well over 100 hours in a week, while required to remain on-call at a given worksite 24/7.

105.   For example, during the week of March 15, 2021 through March 21, 2021, Defendants required Plaintiff Torres to work, and Plaintiff Torres did in fact work a total of a 110.25 hours, on a job site located in Bronx, New York.

106.   During that same week, Defendants paid Plaintiff Torres at the rate of $10.00 per hour for each of the 110.25 hours that he worked. Defendants paid Plaintiff Torres below the New York minimum wage rate of $15.00 per hour for all hours, and never paid Plaintiff Torres one and one-half the New York minimum wage rate, or even at his regular rate, for any of the 70.25 hours that he worked beyond 40 that week.

107.   Moreover, despite working greater than ten hours on six days during the week of March 15, 2021 through March 21, 2021, Defendants failed to pay Plaintiff Torres his owed spread-of-hours pay of one hour per day at the New York minimum wage rate of $15.00 per hour.

### *Kelsey Fleming*

108.   Plaintiff Kelsey Fleming worked for Defendants from in or around mid-July 2021 until in or around late December 2021.

109.   Plaintiff Fleming worked for Defendants in the Bronx.

110.   Plaintiff Fleming reported directly to Defendant Samuel and another one of the Corporate Defendants' managers, "Paul" (last name unknown).

111.   Defendants required Plaintiff Fleming to report her weekly hours worked to "Crystal," Defendant CESG's bookkeeper.

112.    Defendants paid Plaintiff Fleming at the rate of $10.00 per hour.

113.    Plaintiff Fleming routinely worked between five and seven days per week, for well over 100 hours in a week.

114.    Like each of the other Plaintiffs, whenever assigned to a week-long job (or longer), Defendants required Plaintiff Fleming to remain on-call at a given worksite 24/7 until that given job assignments was concluded.

115.    For example, during the week of August 23, 2021 through August 29, 2021, Defendants required Plaintiff Fleming to work, and Plaintiff Fleming did in fact work six days, from Monday through Saturday, for a 24-hour, round-the-clock job. The only breaks Plaintiff Fleming took when working on this job was to travel home for three-to-four hours at a time, for two nights during this week, to change clothes, get washed up, and refresh. As a result, Plaintiff Fleming worked a total of approximately 124 hours during this week.

116.    During that same week, Defendants paid Plaintiff Fleming at the rate of $10.00 per hour for each of the 124 hours that she worked. Defendants paid Plaintiff Fleming below the New York minimum wage rate of $15.00 per hour for all hours, and never paid Plaintiff Fleming one and one-half the New York minimum wage rate, or even at her regular rate, for any of the approximately 84 hours that she worked beyond 40 that week.

117.    Moreover, despite working greater than ten hours on six days during the week of August 23, 2021 through August 29, 2021, Defendants failed to pay Plaintiff Fleming her owed spread-of-hours pay of one hour per day at the New York minimum wage rate of $15.00 per hour.

## FIRST CLAIM FOR RELIEF AGAINST DEFENDANTS
### *Unpaid Overtime under the FLSA*

118.    Plaintiffs and FLSA Plaintiffs repeat, reiterate, and reallege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

119.    29 U.S.C. § 207(a) requires employers to compensate their employees at a rate not less than one and one-half times their regular rate of pay for all hours worked exceeding forty in a workweek.

120.    As described above, Defendants are "employers" within the meaning of the FLSA, while Plaintiffs and FLSA Plaintiffs are "employees" within the meaning of the FLSA.

121.    Plaintiffs and FLSA Plaintiffs worked in excess of forty hours per week, yet Defendants failed to compensate Plaintiffs and FLSA Plaintiffs in accordance with the FLSA's overtime provisions.

122.    Defendants willfully violated the FLSA.

123.    Plaintiffs and FLSA Plaintiffs are entitled to overtime pay for all hours worked per week in excess of forty at the rate of one and one-half times their respective regular rates of pay.

124.    Plaintiffs and FLSA Plaintiffs are also entitled to liquidated damages, interest, attorneys' fees, and costs for Defendants' violations of the FLSA's overtime provisions.

### SECOND CLAIM FOR RELIEF AGAINST DEFENDANTS
*Unpaid Overtime under the NYLL and the NYCCRR For Individual Plaintiffs*

125.    Plaintiffs and any FLSA Plaintiff who opts-into this action, and thereby opt-out of the *Richardson* action, repeat, reiterate, and reallege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

126.    N.Y. Lab. Law § 160 and 12 NYCCRR § 142-2.2 require employers to compensate their employees at a rate not less than one and one-half times their regular rate of pay, or one and one-half times the minimum wage rate, if greater, for all hours worked exceeding forty in a workweek.

127.     Defendants are "employers" within the meaning of the NYLL and the NYCCRR, while Plaintiffs and any FLSA Plaintiff who opts-into this action, and thereby opt-out of the *Richardson* action, are "employees" within the meaning of the NYLL and the NYCCRR.

128.     Plaintiffs and any FLSA Plaintiff who opts-into this action, and thereby opt-out of the *Richardson* action, worked in excess of forty hours in a workweek, yet Defendants failed to compensate them in accordance with the NYLL's and the NYCCRR's overtime provisions.

129.     Plaintiffs and any FLSA Plaintiff who opts-into this action, and thereby opt-out of the *Richardson* action, are entitled to overtime pay for all hours worked per week in excess of forty at the rate of one and one-half times their regular rate of pay, or one and one-half the minimum wage rate, if greater.

130.     Plaintiffs and any FLSA Plaintiff who opts-into this action, and thereby opt-out of the *Richardson* action, are also entitled to liquidated damages, interest, attorneys' fees, and costs for Defendants' violations of the NYLL's and NYCCRR's overtime provisions.

### THIRD CLAIM FOR RELIEF AGAINST DEFENDANTS
*Failure to Pay Minimum Wages in Violation of the NYLL For Individual Plaintiffs*

131.     Plaintiffs and any FLSA Plaintiff who opts-into this action, and thereby opt-out of the *Richardson* action, repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if fully set forth herein.

132.     N.Y. Lab. Law § 652(1) prescribes a minimum wage that employers must pay to their employees for each hour worked.

133.     As described above, Defendants are "employers" within the meaning of the NYLL, while Plaintiffs and any FLSA Plaintiff who opts-into this action, and thereby opt-out of the *Richardson* action, are employees within the meaning of the NYLL.

134.     As also described above, Defendants did not compensate Plaintiffs or any FLSA Plaintiff who opts-into this action, and thereby opt-out of the *Richardson* action, at the minimum hourly rate required by the NYLL for all hours worked.

135.     At the least, Plaintiffs and any FLSA Plaintiff who opts-into this action, and thereby opt-out of the *Richardson* action, are entitled to payment at the minimum wage for every hour worked for Defendants pursuant to the NYLL's minimum wage provisions.

136.     Plaintiffs and any FLSA Plaintiff who opts-into this action, and thereby opt-out of the *Richardson* action, are also entitled to liquidated damages, interest, and attorneys' fees for Defendants' violations of the NYLL's minimum wage provisions.

### FOURTH CLAIM FOR RELIEF AGAINST DEFENDANTS
*Failure to Pay Spread-of-Hours Pay in Violation of the NYCRR For Individual Plaintiffs*

137.     Plaintiffs and any FLSA Plaintiff who opts-into this action, and thereby opt-out of the *Richardson* action, repeat, reiterate, and reallege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

138.     N.Y. Lab. Law § 652 and 12 NYCCRR § 142-2.5 provide that an employee shall receive one hour's pay at the minimum hourly wage rate for any day worked in which the spread of hours exceeds ten hours.

139.     As described above, Defendants are "employers" within the meaning of the NYLL and NYCCRR, while Plaintiffs any FLSA Plaintiff who opts-into this action, and thereby opt-out of the *Richardson* action, are employees within the meaning of the NYLL and NYCCRR.

140.     As also described above, Defendants failed to provide Plaintiffs and any FLSA Plaintiff who opts-into this action, and thereby opt-out of the *Richardson* action, with spread of hours pay when their workday exceeded ten hours from start to finish.

141.    Plaintiffs and any FLSA Plaintiff who opts-into this action, and thereby opt-out of the *Richardson* action, are entitled to this extra hour of pay, at the minimum wage rate, for all days worked in excess of ten hours.

142.    Plaintiffs and any FLSA Plaintiff who opts-into this action, and thereby opt-out of the *Richardson* action, are also entitled to liquidated damages, interest, and attorneys' fees for Defendants' failure to pay the required spread of hours pay

### FIFTH CLAIM FOR RELIEF AGAINST DEFNEDANTS
*Failure to Furnish Proper Wage Statements in Violation of the NYLL For Individual Plaintiffs*

143.    Plaintiffs and any FLSA Plaintiff who opts-into this action, and thereby opt-out of the *Richardson* action, repeat, reiterate, and reallege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

144.    N.Y. Lab. Law § 195(3) requires that employers furnish employees with wage statements containing accurate, specifically enumerated criteria on each occasion when the employer pays wages to the employee.

145.    Defendants are "employers" within the meaning of the NYLL, while Plaintiffs and any FLSA Plaintiff who opts-into this action, and thereby opt-out of the *Richardson* action, are "employees" within the meaning of the NYLL and the NYCCRR.

146.    As described above, Defendants, on each payday, failed to furnish Plaintiffs and any FLSA Plaintiff who opts-into this action, and thereby opt-out of the *Richardson* action, with accurate wage statements containing the criteria required under the NYLL.

147.    Pursuant to NYLL § 198(1-d), Defendants are liable to Plaintiffs and any FLSA Plaintiff who opts-into this action, and thereby opt-out of the *Richardson* action, in the amount of $250.00 for each workday that the violations occurred, up to a statutory cap of $5,000.00.

## SIXTH CLAIM FOR RELIEF AGAINST DEFENDANTS
*Failure to Furnish Proper Wage Notice in Violation of the NYLL For Individual Plaintiffs*

148.    Plaintiffs and any FLSA Plaintiff who opts-into this action, and thereby opt-out of the *Richardson* action, repeat, reiterate, and reallege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

149.    NYLL § 195(1) requires that employers provide employees with a wage notice at the time of hire containing accurate, specifically enumerated criteria.

150.    As described above, Defendants are "employers" within the meaning of the NYLL, while Plaintiffs and any FLSA Plaintiff who opts-into this action, and thereby opt-out of the *Richardson* action, are "employees" within the meaning of the NYLL.

151.    As also described above, Defendants failed to furnish Plaintiffs and any FLSA Plaintiff who opts-into this action, and thereby opt-out of the *Richardson* action, with any wage notice at hire, let alone one that accurately contained all of the criteria required under the NYLL.

152.    Pursuant to NYLL § 198(1-b), Defendants are liable to Plaintiffs and any FLSA Plaintiff who opts-into this action, and thereby opt-out of the *Richardson* action, in the amount of $50.00 for each workday after the violations initially occurred, up to a statutory cap of $5,000.00.

## DEMAND FOR A JURY TRIAL

153.    Pursuant to FRCP 38(b), Plaintiffs and FLSA Plaintiffs demand a trial by jury in this action.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff and FLSA Plaintiffs demand judgment against Defendants as follows:

a.    A judgment declaring that the practices complained of herein are unlawful and in violation of the aforementioned United States and New York State laws;

b. Preliminary and permanent injunctions against Defendants and their officers, owners, agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in each of the unlawful practices, policies, customs, and usages set forth herein;

c. An order restraining Defendants from any retaliation against Plaintiffs and/or FLSA Plaintiffs for participation in any form in this litigation;

d. Designation of this action as an FLSA collective action on behalf of Plaintiff and FLSA Plaintiffs and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to the FLSA Plaintiffs, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b), and tolling of the statute of limitations;

e. Designation of Plaintiffs and their counsel as collective action representatives under the FLSA;

f. All damages that Plaintiffs and FLSA Plaintiffs have sustained as a result of the Defendants' conduct, including all unpaid wages and any shortfall between wages paid and those due under the law that Plaintiffs and FLSA Plaintiffs would have received but for Defendants' unlawful payment practices;

g. Liquidated damages and any other statutory penalties as recoverable under the FLSA and NYLL;

h. Awarding Plaintiff and FLSA Plaintiffs their costs and disbursements incurred in connection with this action, including reasonable attorneys' fees, expert witness fees and other costs, and an award of a service payment to Plaintiff;

     i.       Awarding Plaintiffs with a service award for their role as collective action representatives and in recognition for their dedication to the FLSA Plaintiffs and their willingness to come forward as the lead Plaintiff on behalf of the FLSA Plaintiffs;

     j.       Pre-judgment and post-judgment interest, as provided by law; and

     k.       Granting Plaintiffs and FLSA Plaintiffs such other and further relief as this Court finds necessary and proper.

Dated:  New York, New York
       April 19, 2021

                         Respectfully submitted,

                         **JOSEPH & NORINSBERG, LLC**

By:    _____
                         JON L. NORINSBERG
                         MICHAEL R. MINKOFF
                         110 East 59th Street, Suite 3200
                         New York, New York 10022
                         Tel.: (212) 227-5700
                         Fax: (212) 656-1889
                         *Attorneys for Plaintiffs and FLSA Plaintiffs*